UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| IN RE: ALMA ENERGY, LLC, | ) | |
| | ) | |
| Debtor, | ) | |
| | ) | Civil No. 10-80-ART |
| PHAEDRA SPRADLIN, CHAPTER 7 | ) | |
| TRUSTEE OF ALMA ENERGY, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| NATHAN WILLIAMS, | ) | **ORDER** |
| | ) | |
| Appellee. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Some situations simply call for a closer look. The present appeal from the bankruptcy court is one such example. Here, the appellee, Nathan Williams, was both the sole member of the Debtor, Alma Energy, LLC, and a claimant against the estate. In fact, Williams had a claim for $500,000 against Alma. Following a court-approved conversion order, Williams stepped aside from his management role with the Debtor and the appellant, Trustee Phaedra Spradlin, assumed control. She soon thereafter requested the bankruptcy court take one more look. That claim is now the subject of this appeal.

Williams's relationship to the Debtor Alma, combined with questions about his claim's validity, require that his dealings with the Debtor must be subjected to closer scrutiny. The bankruptcy court's order, however, does not make clear the level of scrutiny applied to Williams's claim. While it is possible that the bankruptcy court scrutinized the claim in great

detail, the order neglects to mention this analysis. Therefore, the Court must remand this action to the bankruptcy court to apply rigorous scrutiny to the claim or, in the alternative, to explain the scrutiny already applied to the claim. Without a more complete record from the bankruptcy court, the Court will not address the merits of the Trustee's arguments at this time.

## BACKGROUND

Before there was a bankruptcy proceeding, there was a lawsuit. This lawsuit involved Darrell Williams, the appellee's father. Williams sued Sidney Coal Co., Inc., a Massey Energy Company, in Pike Circuit Court. *See Darrell Williams and Money Branch Coal, Inc. v. Sidney Coal Co., Inc. and Unknown Defendants*, Action No. 04-CI-00608. The specific facts of this suit do not matter for present purposes, but what does matter was Darrell Williams's willingness to release his claim against this Massey company. Around the same time, another company, Alma Energy, LLC, sought a lease with a Massey Company. R. 6 at 10. For this Alma/Massey transaction to occur, Darrell Williams had to terminate his claim against the Massey Company, Sidney. In return, Alma Energy agreed to compensate Williams in the amount of $750,000, with $250,000 going to his attorney. *See* Case No. 07-70370, Doc. No. 908 at 4. Thus, on June 28, 2005, Williams settled his lawsuit against Sidney, *id*., and the Pike Circuit Court entered an agreed order dismissing the suit. At some point following this settlement, Darrell Williams assigned his right to receive this compensation from Alma to his son, Nathan Williams. The exact date of this assignment remains unclear. R. 12, Attach. 2.

Fast forward to 2007. Alma Energy found itself in Chapter 11 bankruptcy. Doc. No. 1. Alma Energy, LLC, had one remaining member by this time—Nathan Williams—the other

2

members having previously sold him their interests. Case No. 07-70370, Doc. No. 184 at 3. With the other members gone, Nathan Williams managed the affairs of the bankruptcy estate for Alma Energy during the Chapter 11 proceeding. Eventually, Alma and other interested parties concluded a Settlement Agreement on December 14, 2007, *Id*., Doc. No. 184, which the bankruptcy court approved on February 8, 2008, *Id*., Doc. No. 220. Williams's claim against Alma, initially held by his father Darrell and later assigned to him, found its way into this agreement. *Id*., Doc. No. 184 at 11, 23.

Fast forward again to 2009. Despite the passage of time and the approval of a Settlement Agreement, much remained to be settled. On May 4, 2009, the Debtor Alma filed a complaint in the bankruptcy court but in a separate proceeding from the original Chapter 11 suit. *Alma Energy, LLC v. Kentucky Coal Venture I, LLC et al.*, A.P. 09-7005. The complaint alleged that all of the parties to the original 2008 Settlement Agreement were not living up to their ends of the bargain, and as a result, the bankruptcy court's order approving the Settlement Agreement should be vacated. *Id*., Doc. No.1. More specifically, the claim stated "[t]hat because of the fraudulent inducement committed by the Halle Entities, the Settlement Agreement must be declared void *ab initio*, and Alma, Darrell Williams, Nathan Williams, Nathan's Welding, must be permitted to prove and recover in this lawsuit the value of the claims they released." *Id*. at 44. The Halle Entities were third parties whose involvement is not directly at issue in this appeal. Nathan Williams, in his capacity as managing member, signed the complaint on behalf of the Debtor Alma Energy. *Id*. at 71. Thus, the bankruptcy court had two ongoing proceedings involving the same estate before it—one proceeding involving Alma's original Chapter 11 action

3

and another proceeding to set aside the 2008 Settlement Agreement from that Chapter 11 case.

The alleged failures of the third parties to uphold their commitments were not the only complications in this case. Gross mismanagement and other problems involving the Debtor Alma led the United States Trustee to step in and request that Alma's Chapter 11 case be converted to one under Chapter 7. Case No. 07-70370, Doc. No. 655. The bankruptcy court agreed with the U.S. Trustee and approved the motion on May 20, 2009, *Id.*, Doc. No. 700, officially vesting all decisions for Alma in an appointed trustee, Phaedra Spradlin.

The Trustee Phaedra Spradlin soon thereafter commenced a review of the 2008 Settlement Agreement. On January 13, 2010, the Trustee filed an objection to Nathan Williams's claim for $500,000 against Alma that was part of the 2008 Settlement Agreement. *Id.*, Doc. No. 908. The Trustee objected to Williams's claim on two grounds. First, bankruptcy estate funds could not be used to pay unliquidated, contingent claims, and second, no documentation had been attached in support of the claim. *Id*. Williams responded to the Trustee's objection on February 10, 2010, *Id.*, Doc. No. 912, and the Trustee replied on March 10, 2010, *Id.*, Doc. No. 922. Finally, on May 7, 2010, the bankruptcy court entered an order upholding Nathan Williams's claim. *Id.*, Doc. No. 936; R. 1, Attach. 3. This appeal followed.

## DISCUSSION

The Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a) and reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Kennedy*, 249 F.3d 576, 579 (6th Cir. 2001). The Trustee raises two issues on appeal: (1) whether the bankruptcy court erred in concluding the Trustee was bound by the terms of the

4

Settlement Agreement waiving the right to object to a claim, and (2) whether the bankruptcy court erred in allowing the claim of Nathan Williams. R. 5.

In a perfect world, Nathan Williams would have presented the bankruptcy court with extensive documentation detailing his claim for $500,000: a signed agreement between Alma Energy and Darrell Williams, the actual agreement whereby Darrell Williams assigned the claim to him from the Sidney litigation, or financial documents showing how the parties arrived at the original $750,000 figure. But this is not a perfect world, and Nathan Williams did not submit the perfect claim. That does not mean his claim should be disallowed. Still, substantial questions exist as to the claim's validity. And Nathan Williams's relationship to Alma means his claim should be subjected to a higher level of scrutiny than the average transaction with the bankrupt estate. But based on the bankruptcy court's order, it remains unclear to what extent the bankruptcy court scrutinized the claim.

**1. The Bankruptcy Court's Order**

The bankruptcy court's order focuses primarily on the general rule in bankruptcy proceedings: contracts executed by the debtor in possession—the debtor in a Chapter 11 case, 11 U.S.C. § 1101(1)—bind the subsequent trustee. R. 1, Attach. 3; *see Armstrong v. Norwest Bank, Minn., N.A.*, 964 F.2d 797, 801 (8th Cir. 1992); *In re MS55, Inc.*, 477 F.3d 1131, 1135 - 1136 (10th Cir. 2007); *In re Philadelphia Athletic Club*, 17 B.R. 345 (Bankr. E.D. Pa. 1982). Applying this rule to the present case means the following: the Trustee should be bound by the 2008 Settlement Agreement (and claims therein) as agreed to by the debtor in possession before the Trustee's appointment. And that is exactly what the bankruptcy court decided.

Before issuing its order, the bankruptcy court specifically requested that the parties supplement their briefs to address exceptions to this general rule found in the case *In re Philadelphia Athletic Club*. Case No. 07-70370, Doc. No. 933; Doc. No. 934. There, the court upheld the general rule binding the trustee but noted that there might be times when a court should look more closely at the actions taken by the debtor in possession. 17 B.R. at 347. For example, evidence of fraud or prejudice to the estate would be grounds for scrutinizing the debtor in possession's actions and potentially releasing the trustee. *Id*. Here, the bankruptcy court noted in its order that while the Trustee provided examples of possible fraud involving the debtor in possession, evidence of such fraud was lacking. R. 1, Attach. 3. The order also stated that the Settlement Agreement had been approved by the previous judge assigned to the case, Judge Howard, only after objections to the agreement were withdrawn and with a specific finding that the settlements were "fair and reasonable." *Id*. The court then denied the Trustee's objection to the claim. *Id*.

Aside from restating Judge Howard's finding that the Settlement Agreement had been fair and reasonable, the order focused solely on the general rule binding the trustee to the decisions of the debtor in possession. To be sure, upholding this general rule serves an important purpose. The rule ensures that parties dealing with the debtor in possession have confidence in those dealings. To hold otherwise would impair the debtor in possession's ability to conduct business with third parties for fear that a later-appointed trustee would undo the decisions and agreements that had been reached. *In re Philadelphia Athletic Club,* 17 B.R. at 347. The policy goal of protecting dealings with third parties, however, is not the primary concern behind the Trustee's

6

objection in this appeal. Here, the concern involves Williams's dealings with himself in another capacity as a claimant. The bankruptcy court's order fails to acknowledge this concern.

**2. The Need for Scrutiny**

Labels matter. This is especially true in the world of bankruptcy. Certain labels impose certain duties. And those labels impact the way a court looks at an individual's actions and decisions. The bankruptcy court should have subjected Williams's claim to heightened scrutiny because he may have qualified as an "insider," and at any rate, his status as the sole member of Alma Energy rendered his transactions with Alma inherently suspect.

Williams may qualify as an "insider" under the Bankruptcy Code based on his role as owner/member of the Debtor Alma Energy, LLC. 11 U.S.C. § 101(31). Some courts have defined the term "insider" to include "anyone with 'a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor.'" *In re Congrove*, No. 04-8049, 2005 WL 2089856, *7 (BAP 6th Cir. Aug. 31, 2005) (citing *In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996) (quoting S. REP. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5810)). Being an insider likely has its advantages, but it also means one's dealings with the bankrupt entity must be viewed in a different, more critical light.

The Bankruptcy Code divides insiders into three categories: individual debtors, corporate debtors, and partnership debtors. § 101(31). Each category then includes persons or entities who qualify as insiders based on their relationship to the debtor. For example, the corporation provision in § 101(31) encompasses directors of the debtor, officers of the debtor, persons in

control of the debtor, partnerships in which the debtor is a general partner, general partners of the debtor, and relatives of any of these individuals. § 101(31)(B)(i)-(vi). The Code, however, does not specifically list the limited liability corporation business form, which Alma Energy happens to be. Still, a number of courts addressing this question have found that the relationships listed under § 101(31) should not be considered exhaustive and the LLC form may appropriately be considered under this section for purposes of defining an insider. *See In re Barman*, 237 B.R. 342, 348 (Bankr. E.D. Mich. 1999) (stating that a LLC is analogous to a corporation for determining insider status); *In re Tompkins,* 430 B.R. 453, 460 (Bankr. W.D. Mich. 2010) (commenting that the Code's definition of an "insider" has been considered flexible, encompassing relationships outside of those specifically enumerated); *Longview Aluminum, LLC v. Brandt*, 431 B.R. 193, 197 (N.D. Ill. 2010)); *but see In re Weddle*, 353 B.R. 892, 899 (Bankr. D. Idaho 2006) (quoting *In re Enter. Acquisition Partners, Inc.*, 319 B.R. 626, 633 (BAP 9th Cir. 2004) ("Those who are not per se insiders may still qualify as insiders, but 'only if they meet the test for non-statutory insiders, which requires some showing of control of the debtor.'").

Other courts have held that the question of insider status boils down to one of control—to what extent does the individual or entity exert control or influence over the debtor? *Miller v. Schuman (In re Schuman)*, 81 B.R. 583, 586 (BAP 9th Cir. 1987); *In re Dupuis*, 265 B.R. 878, 885 (Bankr. N.D. Ohio 2001). Regardless of whether Williams qualifies as an insider because of his similarity to the examples listed under § 101(31), or because of his control over the debtor, he appears to qualify for this designation. He retained significant control over the assets, claims, and decisions of Alma, evidenced in part by his signature on the bankruptcy schedules and his

8

status as the sole member of Alma. R. 12 at 2. Williams, it seems, called the shots and qualifies as an insider.

But such control comes with a price. The bankruptcy court must subject the dealings between an insider and a debtor to closer scrutiny. The Trustee points the Court to a number of cases supporting this point. R. 12; *see In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1282 n.13 (8th Cir. 1988) ("When the claimants are insiders of the debtor, the claimants' conduct is closely scrutinized, and the trustee need prove only that [the claimants] breached a fiduciary duty or engaged in conduct that is somehow unfair."); *Beal Bank, S.S.B. v. Waters Edge Ltd. P'ship*, 248 B.R. 668, 680 (D. Mass. 2000) (insider transactions set out in a Chapter 11 plan require greater scrutiny to ensure fairness); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 498 (Bankr. S.D.N.Y. 1991) (when determining if a settlement is fair and reasonable pursuant to Fed. R. Bankr. Proc. 9019(a), a bankruptcy court should subject insider agreements to closer scrutiny than agreements between debtor and unrelated entities). Assuming Williams qualifies as an insider, there is simply no getting around the fact that the dealings between Williams and the Debtor Alma deserve a second look.

Even if Williams does not fit snugly the statutory definition of an "insider," both Williams and the Trustee agree that increased scrutiny is warranted where the line between the claimant and the Debtor is not entirely clear. They both point to the Supreme Court's decision in *Pepper v. Litton*, 308 U.S. 295 (1939), which sets forth the basic rule that when a claim is presented by an officer, director, or shareholder, the dealings between the bankrupt entity and that person require "rigorous scrutiny." R. 11 at 3; R. 12 at 3. Williams concedes that this

9

covers a member of an LLC and also agrees that *Pepper* establishes a heightened bar when the dealings involve a single shareholder or a single member, as is the case here. R. 11 at 3. The Supreme Court stated the test for evaluating such cases in these terms: "whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain." *Pepper*, 308 U.S. at 306-07; *see In re Marquam Inv. Corp.*, 942 F.2d 1462, 1465 (9th Cir. 1991). The dealings between Williams and the Debtor Alma could hardly be called an arm's length transaction—in reality they involved Williams dealing with himself in another capacity. Williams, however, contends the bankruptcy court already subjected his claim to rigorous scrutiny. After all, approval of the claim was contingent not only on the approval of the bankruptcy court, but also on the absence of objections by other creditors. R. 11 at 4. Williams also states that he released other claims against the estate in agreeing to the settlement. *Id*. While this may be so, the bankruptcy court's order fails discuss or mention these concerns.

To be clear, the Court does not declare that Williams is definitively an insider. While he appears to satisfy the qualifications, the bankruptcy court is best-positioned to make that ultimate determination and should do so upon remand.

### 3. Other Factors

Williams's relationship to Alma and the uncertainty over the scrutiny applied to his claim are not the only causes for concern. Other questionable circumstances involving the claim further support remanding this action to the bankruptcy court.

First, the mismanagement problems that resulted in the case being converted from a Chapter 11 proceeding to one under Chapter 7 provide cause for concern. In its motion to

convert the case, the United States Trustee alleged that gross mismanagement and conflicts of interest by the Debtor Alma necessitated converting the case. Case No. 07-70370, Doc. No. 655. The bankruptcy court agreed, finding the following problems: the Debtor could not confirm a plan within a reasonable time, no accurate reports existed from which the court could determine continuing losses, the irregularity of the Debtor's attorney fee payments and the failure to pay taxes constituted gross mismanagement, the Debtor filed incomplete reports, and the Debtor's counsel acted for another party in filings before the court. *Id.*, Doc. No. 733 at 38-41; Doc. No. 700 at 1-2. As a result, the bankruptcy court concluded that "[c]onversion to Chapter 7 [was] in the best interests of creditors and the estate." *Id.*, Doc. No. 700 at 1-2. The following questions arise: How long had the management problems gone on, and were they occurring at the time the bankruptcy court approved the 2008 Settlement Agreement? While such problems may not directly implicate the validity of Williams's claim, they do call into question the manner in which Williams handled the affairs of the bankrupt entity.

Second, the claim included very little support. All Williams provided was (1) an order from Pike County Circuit Court dismissing the lawsuit, *Darrell Williams and Money Branch Coal, Inc. v. Sidney Coal Company, Inc. and Unknown Defendants*, action no. 04-CI-00608, and (2) the following summary:

> On June 28th 2005 Darrell Williams settled a Lawsuit against Sidney Coal a Massey Company at the time Alma Energy LLC purchased a Lease on some Coal from Martin County Coal another Massey Energy Company, It was a condition in the Transaction that Darrell Williams had to settle that suit. Darrell Williams gave Nathan Williams the worth of that Law suit which was Figured at $750,000 by Alma Energy, Alma Energy also agreed to pay Jim Pruitt the Attorney in the Case for Darrell Williams $250,000, At the time of that closing Alma agreed to pay Nathan Williams the $500,000 dollars when it could afford to.

Doc. No. 908, Exhibit A (punctuation and capitalization as in original). Williams relies on the above summary to prove the assignment of the claim from his father to himself. How the parties determined these figures remains to be seen, as does the date of the assignment.

While the Bankruptcy Code may not permit a court to disallow a claim based solely on a lack of supporting documentation, *see In re Burkett*, 329 B.R. 820, 826 (Bankr. S.D. Ohio 2005), the absence of additional documentation or proof does not bode well for the claim of one whose actions are already subject to more rigorous scrutiny. It may be that when the bankruptcy court subjects the claim to scrutiny, it will find that the above documentation adequately supports the claim's validity. It may also be that the claim will be disallowed under one of the enumerated exceptions for denying a claim in 11 U.S.C. § 502(b)(1)-(9), (d) and (e). *See Burkett*, 329 B.R. at 826; *see also Dove-Nation v. eCast Settlement Corp.* (*In re Dove-Nation*), 318 B.R. 147, 150 (8th Cir. 2004). Such speculation would serve no purpose at this time.

Third, Williams's father's testimony about the assignment of the claim to his son is itself a head-scratcher. Darrell Williams testified on May 14, 2009, at an examination taken on behalf of THC (a party to the Settlement Agreement). When asked about the existence of a writing to support the transfer of the claim, he commented, "I think there's an agreement." R. 5 at 18 (citing Case No. 07-70370, Doc. No. 922, Attach. 1 at 37). Williams, according to the Trustee, could offer no specifics on the terms of the agreement. *Id*. If anyone could testify to the details of the agreement, it should presumably be the person who made the agreement.

And finally, Nathan Williams failed to list the claim on the Debtor's schedules filed as part of the bankruptcy proceedings on August 27, 2007. R. 5 at 16. He argues that this omission

was cured by his filing of the claim on November 15, 2007. R. 11 at 4. This may be the case. But why did he choose not to list the claim when he originally filed the schedules or to amend the schedules as the bankruptcy rules permitted him to do? Fed. R. Bankr. P. 1009.

These questions are not intended as arguments for or against the claim. They instead show why, in addition to Williams's relationship to the Debtor, closer scrutiny of the claim is warranted. On remand, the bankruptcy court may very well decide to uphold the claim and once again overrule the Trustee's objection. But this Court cannot affirm the bankruptcy court's order without a better understanding of the scrutiny applied to the claim and why it decided as it did. The Sixth Circuit has held that a district court's failure to articulate the reasons behind its decision is normally grounds for a remand. *Jones v. Potter*, 488 F.3d 397, 411 (6th Cir. 2007) (citing *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 481 F.3d 926, 931 (6th Cir.2007) ("For the purposes of appellate review, . . . the district court must provide some indication as to why it exercised its discretion as it did.")). Likewise, the bankruptcy court must provide this Court some rationale for its decision to uphold the claim.

## CONCLUSION

Accordingly, it is **ORDERED** that this action is **REMANDED** to the bankruptcy court for further proceedings consistent with this opinion.

This the 16th day of November, 2010.



Signed By:
*Amul R. Thapar*
**United States District Judge**